## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES DIVISION/IBT, 41475 Gardenbrook Rd. Novi, MI 48375 | ) ) ) ) ) |
| *Plaintiff,* | ) ) |
| v. | ) ) Case No.: 1:20-cv-844 |
| NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a AMTRAK 60 Massachusetts Avenue, N.E. Washington, D.C. 20002 | ) ) ) ) ) |
| *Defendant.* | ) ) |

_____

### COMPLAINT

The Brotherhood of Maintenance of Way Employes Division/IBT("BMWED") brings this Complaint against the National Railroad Passenger Corporation, ("Amtrak" or "Carrier"), for a declaratory order that Amtrak is violating Section 2, Seventh of the Railway Labor Act ("RLA"), 45 U.S.C. §§ 152, Seventh, by unilaterally changing and abrogating the parties' collective bargaining agreement by permitting persons other than Amtrak maintenance of way employees to perform certain work that a BMWED-Amtrak collective bargaining agreement reserves to BMWED- represented Amtrak employees.

**Parties**

1. BMWED is an unincorporated labor association that maintains its headquarters in Novi, Michigan. BMWED is the duly designated representative for collective bargaining under

1

Section 1 Sixth of the RLA, 45 U.S.C. §151 Sixth, of employees of Amtrak working in the class or craft of maintenance of way employee.  On January 1, 2005, BMWED became an autonomous division of the International Brotherhood of Teamsters.  Prior to that date, the BMWED was an international union founded in 1887 that went by the name Brotherhood of Maintenance of Way Employes ("BMWE").

2. Amtrak is a rail carrier as that term is defined in Section 1, First of the RLA, 45 U.S.C. §151, First.  Amtrak is a partially government-funded corporation that maintains its headquarters in Washington, DC.

## Jurisdiction and Venue

3. This Court has jurisdiction over this complaint pursuant to 28 U.S.C. §§ 1331 and 1337 because it arises under the RLA, an act of Congress regulating interstate commerce.  The Court has jurisdiction over the request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) and (c) because Amtrak owns and operates lines of railroad within this District and is headquartered in this district.

## Statement of Claim

5.   Among other things, Amtrak's maintenance of way employees represented by BMWED are responsible for constructing, repairing, rehabilitating, upgrading, renewing, inspecting and maintaining the Carrier's track and right of way, as well as bridges, buildings, and other structures.

6. BMWED and Amtrak, are parties to a collective bargaining agreement ("CBA") that establishes and governs the rates of pay, rules, and working conditions of Amtrak employees working in the Maintenance of Way craft/class on the Northeast Corridor (NEC").

7. The "Scope Rule" of the  CBA, as amended in 1987, provides that the CBA is the agreement between Amtrak and its employees represented by the BMWED who perform work "generally recognized as Maintenance of Way work, such as inspection, construction, repairs and maintenance of water facilities, bridges, culverts, buildings and other structures, tracks, fences, and roadbed ... and work which as of June 1, 1945, was being performed by these employees…, and [it] shall govern the rates of pay, rules and working conditions of such employees".

8. The Scope Rule further states that if Amtrak seeks to contract-out work within the scope of the CBA, Amtrak shall notify the appropriate BMWED General Chairman at least fifteen days in advance of doing so.

9. Side letter No. 2 to the CBA, dated January 22, 1987 states that "it is the Carrier's intent to preserve work of the scope and magnitude historically performed by members of the BMWE for the Carrier as of January 1, 1987, or prior thereto".

10. Prior to January 1, 1987, in accordance with the Scope Rule, on Amtrak track and right of way covered by the CBA, and close enough to the right of way that Amtrak controls movement of personnel and equipment, and where Amtrak operating and roadway worker rules apply, all protection of workers and equipment ("on-track protection" or "flagging" work) was performed by BMWED represented employees for both Amtrak employees and contractor work forces.

11. After January 1, 1987, in accordance with the Scope Rule, on Amtrak track and right of way covered by the CBA, and close enough to the right of way that Amtrak controls movement of personnel and equipment, and where Amtrak operating and roadway worker rules apply, all on-track protection or flagging work has been performed by BMWED represented employees for both Amtrak employees and contractor work forces.

12. In February and March of 2020 BMWED learned that Amtrak was training employees of a contractor called RailPros in Amtrak on track protection rules, procedures and protocols for those persons to provide such protection as Roadway Workers In Charge ("RWIC"), and that RailPros had advertised positions for "Roadway Worker In Charge-Amtrak-NE" to be located at Trenton, N.J., Newark, N.J., Albany, N.Y., and Philadelphia, PA, which are all within the NEC and covered by the CBA.

13. BMWED opposed the deployment of contractor flaggers and asserted that doing so would be plainly contrary to the CBA, contrary to long-established practice, without any support in the CBA, and an abrogation of the Agreement.

14. On March 9, 2020, Amtrak's Senior Director Labor Relations wrote to BMWED Pennsylvania Federation General Chairman Anthony Sessa stating that Amtrak had provided RWIC training to employees of RailPros at Amtrak's Training Center in Wilmington, DE. The letter stated that RailPros sought the training because it hopes to be hired by a "3rd Party" to provide flagging protection to that party when it works on a project near Amtrak property, which will require that the RailPros employees have access to Amtrak property.

15. General Chairman Sessa responded to Amtrak's March 9 letter by letter dated March 16, 2020. His letter noted that while Amtrak's letter said a third party would be working near

railroad property, RailPros flaggers would require access to Amtrak property to provide flagging protection to that third party, and that Amtrak was providing training to RailPros employees on Amtrak RWIC rules and procedures. BMWED's letter explained that under the CBA, performance of all on-track protection on Amtrak's property, and performance of such work for third party projects and for third parties engaged in non-railroad work near Amtrak's track structure such that Amtrak operating and roadway worker rules apply, is reserved to BMWED forces; and that this work has been performed exclusively by BMWED members since the inception of Amtrak. General Chairman Sessa's letter stated that if Amtrak were to allow persons other than BMWED-represented Amtrak employees to perform flagging work on or related to Amtrak property, that would constitute a unilateral change of the CBA.

16. As of the date of this complaint, Amtrak has not advised BMWED that Amtrak would refrain from permitting RailPros employees from providing on track protection on or near Amtrak property where Amtrak operating and roadway worker rules apply. Nor has Amtrak said that it will deny RailPros access to its property for flagging, or the right to provide on track protection where Amtrak operating and roadway worker rules apply.

17. To BMWED's current knowledge, Amtrak intends to allow RailPros employees to provide on track protection on or near Amtrak property where Amtrak operating and roadway worker rules apply, and to access to Amtrak property to provide on track protection where Amtrak operating and roadway worker rules apply.

## FIRST CAUSE OF ACTION

18. BMWED incorporates by reference, as if fully set forth herein, each and every allegation of paragraphs 1 through 17.

19. Section 2, Seventh of the RLA, 45 U.S.C. §152, Seventh, provides: "No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title."

20. Section 6 of the RLA, 45 U.S.C. § 156, provides:

> Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in the agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board.

21. The Scope Rule of the CBA, and Side Letter No. 2 to the CBA unambiguously reserve Scope work such as flagging to BMWED represented Amtrak employees..

22. By allowing a contractor and contractor forces to perform flagging work on or near Amtrak property where Amtrak operating and roadway worker rules apply, and to access to Amtrak property to provide on track protection where Amtrak operating and roadway worker rules apply, Amtrak is effectively rejecting, abrogating, and changing its  agreements with BMWED  not "in the manner prescribed in such agreement[] or in section 156 of" the RLA, and therefore in violation of Section 2, Seventh of the RLA.

<u>REQUEST FOR RELIEF</u>

WHEREFORE, the BMWED respectfully requests that the Court

6

A.      DECLARE that by allowing a contractor and contractor forces to perform

flagging work on or near Amtrak property where Amtrak operating and roadway worker rules

apply, and to access to Amtrak property to provide on track protection where Amtrak operating

and roadway worker rules apply, Amtrak is effectively rejecting, abrogating,  and changing its

agreements with BMWED in violation of Section 2, Seventh of the RLA;

B.      GRANT the BMWED reasonable attorneys' fees and the costs of this action;

C.      GRANT the BMWED all other relief that the Court deems just and proper.

Respectfully submitted,

  /s/ Richard S. Edelman
Richard S. Edelman
D.C. Bar No. 416348
Mooney, Green, Saindon, Murphy &
  Welch, P.C.
1920 L Street NW, Suite 400
Washington, DC  20036
(202) 783-0010
Redelman@MooneyGreen.com

March 30, 2020